UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DELTA J. WATTS, )
           )
                Plaintiff, )
           )
               vs. )
           )    No. 1:13-cv-01228-LJM-MJD
CAROLYN W. COLVIN Acting )
Commissioner of the Social Security )
Administration, )
           )
               Defendant. )

## ENTRY ON JUDICIAL REVIEW

Plaintiff Delta J. Watts ("Watts") requests judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security (the "Commissioner"), which denied Watts' applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416, 423 & 1382c. Watts contended that she was totally disabled due to chronic back pain with radiculopathy and chronic depression. She asserts that the Administrative Law Judge's ("ALJ's") decision was erroneous in four respects: (1) the ALJ improperly assessed the medical evidence and substituted his own opinions regarding the extent of Watts' impairments; (2) the ALJ improperly failed to obtain a medical advisor to testify about whether Watts' combined impairments medically equaled any Listed impairment; (3) the ALJ erroneously determined that Watts was not credible; and (4) the ALJ failed to give proper consideration to all of her impairments when determining Watts' residual functional capacity ("RFC"). Filing No.

19. Watts seeks reversal of the Commissioner's decision and a remand for an award of benefits; or reversal for a new hearing. *Id.*

## I. BACKGROUND

## A. PROCEDURAL HISTORY

On June 7, 2010, Watts filed her applications for SSI and DIB. R. at 171-74, 175-78. The Social Security Administration denied the applications both initially and after reconsideration. R. at 96-98, 99-101. Watts requested a hearing, which was held on January 19, 2012. R. at 27-67.

On June 14, 2012, the ALJ issued his decision in which he denied her applications. R. at 7-21. Watts requested a review by the Appeals Council, which denied Watts' request on June 7, 2013; therefore, pursuant to 20 C.F.R. §§ 404.981 and 416.1481, the ALJ's decision became the final decision of the Commissioner. R. at 1-4.

On August 2, 2013, Watts filed the instant suit.

## B. AGE, EDUCATION, WORK HISTORY & WATTS' PERCEPTION OF HER IMPAIRMENTS

Watts was 36 years old on the alleged onset day of January 29, 2005, and 43 years old on the date of the ALJ's decision. R. at 19, 21, 197. She completed high school and obtained a certificate as a certified nurse's assistant ("CNA"). R. at 198-99. She had past relevant work as a CNA. R. at 19.

At the hearing, Watts testified that she previously worked as a CNA, but was no longer able to perform that work because of chronic back pain and depression. R. at 36. Watts explained that she had injured her back in 2005 and had received physical therapy, epidural injections and two surgeries to treat herniated spinal discs. R. at 38.

Despite having worked as a CNA again from late in 2005 until she was laid off in 2009, R. at 34, and as a housekeeper in 2010, R. at 36; Watts testified that at the time of the hearing she could only lift about 5 pounds and her ability to both walk and stand were limited by back and hip pain. R. at 37, 42-43. She claimed that she had pain while climbing stairs, sitting and bending over and had pain in her hands and knees as well. R. at 44-45. Watts asserted that she dropped things and fell down once or twice a week. R. at 46-47. She testified that she also needed help dressing, undressing and bathing. R. at 48. Her impairments also prevented her from bowling and dancing. *Id.* In July 2010, Watts stated that she had fallen going down some steps and fractured her ankle. R. at 53.

Watts also testified that the pain was raising her blood pressure, which sometimes got so high she would pass out. R. at 49-50. She took prescribed Percocet, morphine, Ibuprofen and muscle relaxer medications for pain and two medications for blood pressure; the pain medications made her sleepy. R. at 51.

In 2011, Watts received mental health treatment from Midtown Mental Health for depression. R. at 55. She was prescribed Trazdodone, Zoloft and Abilify. *Id.*

Watts testified that she had problems sleeping through the night. R. at 55. She also complained that she was chronically fatigued, isolated herself from other people or was irritable with them, had crying spells where she could not stop crying and had problems with concentration, focus and memory. *Id.* at 55-56.

## C. RELEVANT MEDICAL EVIDENCE

### 1. Treatment Records

On March 21, 2005, Dr. Puschak, M.D., performed an orthopedic examination on Watts. R. at 242-43. She claimed she had injured her back in January while lifting a patient and had immediately noticed pain go down her right leg. *Id.* At the time of the examination, she complained of lower lumbar pain, pain into the right buttock and down the leg, which was worse when sitting. *Id.* Watts also complained of occasional left leg pain. *Id.* Upon examination, Dr. Puschak found that she had positive straight leg raise on the right side, but normal reflexes and full motor strength in the legs. *Id.* Dr. Puschak concluded that Watts should be evaluated for disc herniation or stenosis. *Id.*

On March 22, 2005, Watts received a lumbar spine MRI evaluation. R. at 245. It evidenced that she had a disc protrusion, or a herniated disc, at the L4-L5 level that caused narrowing of the right lateral recess and could cause nerve root irritation on the right side. *Id.*

On March 28, 2005, Watts presented for another orthopedic evaluation and complained of back and right leg pain. R. at 244. It was determined that she had right-sided radicular symptoms. *Id.* She was also having spasms in the low back and limited trunk range of motion. *Id.* The doctor noted the MRI results and that the L4-L5 disc protrusion that created compression of the traversing right L5 nerve root resulted in Watts having right L5 radiculopathy. *Id.*

On May 23, 2005, Watts was evaluated by Dr. Sasso, M.D., another orthopedist. R. at 264. She reported low back pain with radiation into the right leg and difficulty with activities of daily living. *Id.*

On June 3, 2005, Watts was evaluated by Dr. Nordmann, M.D., another orthopedist. R. at 293-94. She reported pain when she sat, stood or walked, that radiated from her low back, into the posterior thigh and lateral calf, then into the top of her foot. *Id.* She had some relief while lying down. *Id.* Upon examination, Dr. Nordmann noted positive straight-leg raise on the right and confirmed the MRI results previously noted. *Id.* Dr. Nordmann concluded that Watts had a right L5 radiculopathy. *Id.*

On August 8, 2005, Dr. Renkins, M.D., performed surgery on Watts, which included a lumbar laminectomy L4 on the right, a lumbar laminectomy L5, also on the right; and the removal of a small disc protrusion. R. at 315.

On December 5, 2005, Watts received another lumbar MRI orthopedic evaluation because she was having right leg numbness and radiculopathy that had persisted post-surgery. R. at 306-07. The evaluation indicated a right subarticular disc protrusion at the L4-L5 level. *Id.*

On December 16, 2005, Watts received a third lumbar MRI orthopedic evaluation because of her recurrent back pain and right hip and leg pain post-surgery. R. at 304-05. This study indicated a right paracentral disc protrusion that abutted the descending right L5 nerve root and mild right and let foraminal stenosis. *Id.*

Dr. Renkins performed another surgery because of the recurrent herniated nucleus pulposus at the L4-L5 level on the right. R. at 291. Specifically, Dr. Renkins performed a right L4-L5 micro lumbar discectomy. *Id.*

There is little in the way of medical records during the period between December 2005 and May 2011. R. at 17, 322, 325, 337, 339, 322-50. A treating physician, Dr.

Cohen, noted in March 2006 that Watts had the RFC for light work.  *Id.*  Watts complained of worsening pain in her back and legs during this period.  R. at 415.  In May 2006, Dr. Cohen stated that Watts was limited to lifting 10 pounds occasionally and 5 pounds frequently, but those restrictions were only for eight days.  R. at 416.

Watts testified that she hurt her back again sometime in 2010.  R. at 41-42.

On May 25, 2011, Watts received a mental health examination at Midtown Clinic. R. at 438-39.  The clinic notes indicate that Watts was complaining of depression and stress from the pain in her back; and reported not sleeping well also because of the pain.  *Id.*  She claimed to be waiting to see a pain specialists after the results of an MRI had come in.  *Id.*  She also reported weight gain of 50 pounds in the last two months because she would snack late at night when she had difficulty sleeping.  *Id.*  Watts further reported poor energy, mood lability, wanting to isolate, having more sad days than happy ones, crying spells, anhedonia, amotivation, feelings of hopelessness and helplessness, guilt and increased irritability wherein she yelled and screamed.  *Id.*  She claimed that she had a couple of days per week when she is more talkative, had more energy, was more irritable, had racing thoughts, was distractible and felt like she wanted to go somewhere and do something such as riding around in the car or shopping.  *Id.* Watts stated that the periods of increased energy combined with irritability caused marked impairment in her relationships with others; she was verbally abusive to her boyfriend and other friends.  *Id.*  She was diagnosed with Major Depressive Disorder, Recurrent, Moderate, and possible Bipolar II disorder; her GAF was assessed at 53.  *Id.*

On September 29, 2011, Watts received another mental health evaluation at Midtown Clinic.  R. at 436.  The psychotherapist noted that Watts appeared to be in pain

and not feeling well. *Id.* Watts reported that she had run out of pain medication but had picked up more that day and requested to reschedule the therapy appointment when she was feeling better. *Id.* Watts stated that she would pick up and start medication recently prescribed: Trazadone, Zoloft and Abilify. *Id.*

## 2. Social Security Administration Consultative Exams

In August 2010, Dr. Nicole Caldwell ("Dr. Caldwell") performed a consultative exam of Watts. R. at 368-73. Watts reported to Dr. Caldwell that she has constant pain in her back that radiated down her right leg, could not walk very far or stand very long. *Id.* She also reported that her pain was exacerbating her hypertension issues. *Id.* Watts stated that she did not climb stairs and that she could lift a gallon of milk in each arm. *Id.*

Upon examination, Dr. Caldwell reported that Watts was very tearful, significant to stress and secondary to pain. *Id.* Although alert, Watts was having difficulty getting into a chair or onto the examination table, even with assistance. *Id.* Watts was unable to lift her legs or answer questions very well due to being soft toned and because of tearfulness. *Id.* The bulk of the examination was normal including her reflexes (both upper and lower), fine motors skills, gait and range of motion in the cervical spine. *Id.* However, Watts was unable to lift either leg against gravity and could not perform forward flexion at all. *Id.* Watts refused to perform several lower back tests complaining of pain. *Id.* Dr. Caldwell did not notice any areas of atrophy even in the lower extremities. *Id.*

Dr. Caldwell's impressions were: "1. Chronic low back pain secondary to a work-related injury. 2. Hypertension, again very [likely] secondary to pain." *Id.* Watts

7

affirmatively stated that all of her complaints were addressed. *Id.*

On August 26, 2010, Watts had x-rays performed of her hips, legs and spine. R. at 375-78. The findings were no fracture or dislocation of the hips and no significant degenerative changes or joint effusions were identified. *Id.* With respect to the spine, the only contraindication was some minimal intervertebral disc space narrowing at the L4-L5 interspace level; there were no other abnormalities. *Id.*

On or around September 8, 2010, Dr. Donna Unversaw, Ph.D., and Dr. F. Lavallo, M.D., reviewed the medical record, including the report of Dr. Calwell's examination of Watts, and determined that she was not disabled. R. at 68-73; 74-29. Specifically, Dr. Unversaw stated that Watts was not alleging any mental impairments and was not on any medications or reporting any mental sources. *Id.* She stated that Watts was tearful during Dr. Calwell's examination from pain. *Id.*

Dr. Lavallo focused on Watts' allegations of chronic pain and recorded several exertional limitations in lifting and/or postural limitations, such as never climbing ladders, ropes or scaffolds, based on the record. *Id.* Dr. Lavallo considered the results of the consultative exam and the x-rays and opined that Watts was not credible in part because the x-rays did not support her not being able to perform most of the exam. *Id*.

These assessments were affirmed in December 2010. R. at 406-07.

### D. VOCATIONAL EXPERT TESTIMONY

At the hearing, the ALJ posed a hypothetical to the vocational expert, Valerie Allen ("Allen"), regarding the jobs a person could perform if it was assumed that the person could perform unskilled, light work, but could only occasionally climb ramps and stairs, stoop, balance, kneel, crouch and crawl; could never climb ladders, ropes or

scaffolds; and had to avoid exposure to hazards, moving machinery and heights. R. at 60-66. Allen testified that such a hypothetical person could perform the job of Cleaner, for which there were approximately 2,000 jobs in Indiana and 100,000 in the national economy; or Mail Clerk, for which there were approximately 1,000 jobs in Indiana and 65,000 in the national economy. R. at 60-62.

Watts' attorney proposed the following hypothetical:

> Please assume a person of claimant's age, education and experience whose standing ability is limited to 10 minutes; walking is limited to a half-a-block; sitting is limited to 15 to 20 minutes; lifting is limited to less than five pounds. She has a GAF assessment of 53 [meaning variably functioning with sporadic difficulties or symptoms in several, but not all areas]. She has chronic fatigue. She has major depressive disorder, [and] . . . isolates from other people. She has uncontrollable crying spells. She has impaired concentration, focus and memory. She is irritable around other people. And she would miss work probably at least three days a month. Under that hypothetical, could a person sustain any competitive employment?

R. at 62-65. Allen testified that the physical functionality indicated would not necessarily render her totally disabled; however, missing three days of work a month would render her incapable of competitive employment. R. at 65.

## E.  RELEVANT ASPECTS OF THE ALJ'S DECISION

At Step I, the ALJ found that Watts met the disability insured status requirements of the Social Security Act through June 30, 2014. R. AT 12. He further found that, although the earnings records indicated Watts had been working at substantial gainful activity levels after the alleged onset date of January 29, 2005, "out of an abundance of caution," the ALJ elected to continue with the five-step analysis to deny the claim. *Id.*

At Step II, the ALJ assessed the evidence of Watts' impairments including her back injury, fibromyalgia, greater saphenous vein insufficiency in the right leg, fractured

left ankle, hypertension, and depression.  R. at 12-14.  The ALJ concluded that the only severe impairment was degenerative disc disease.  R. at 12 (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)).  With respect to mental health issues, after a lengthy analysis, the ALJ concluded that Watts' depression did "not cause more than minimal limitation in [her] ability to perform basic mental work activities and is therefore nonsevere."  R. at 13-14.

At Step III, the ALJ determined that Watts did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. at 14-15.  Specifically, the ALJ analyzed the medical evidence in the record with respect to degenerative disc disease.  *Id.*  There was no specific finding with respect to a combination of impairments.  *Id.*

At Step IV, the ALJ determined that Watts had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with restrictions that included occasionally climbing ramps and/or stairs, occasionally stooping, balancing, kneeling, crouching and crawling; but never climbing ladders, ropes or scaffolds; and avoiding exposure to hazardous moving machinery, hazardous heights etc.  R. a 15-19.  He also opined that Watts was not credible based on the evidence in the record from the consultative examinations, the treatment record, her work history and her testimony at the hearing regarding her work history.  R. at 16-19.  Based on his determination of Watt's RFC, the ALJ concluded at Step IV that Watts could not perform her past relevant work as a CNA.  R. at 19.

At Step V, the ALJ considered Watts' age, education, work history and RFC, as

well as testimony from a vocational expert, and concluded that there were at least two jobs in significant numbers in the national and Indiana economies that Watts could perform:  Cleaner and Mail Clerk.  R. at 19-20.

Accordingly, the ALJ determined that Watts was not disabled.  R. at 20-21.

## II.  STANDARD

To be eligible for SSI or DIB, a claimant must have a disability under 42 U.S.C. § 423.   "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).  To determine whether or not a claimant is disabled, the ALJ applies a five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

I.  If the claimant is employed in substantial gainful activity, the claimant is not disabled.

II.  If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

III.  If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

IV.  If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

V.  If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

The burden of proof is on the claimant for the first four steps, but then it shifts to the Commissioner at the fifth step.  *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Social Security Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become findings of the Commissioner. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Craft*, 539 F.3d at 673; *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Craft*, 539 F.3d at 673 (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Nelson*, 131 F.3d at 1234.

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). *See also*, *Craft*, 539 F.3d at 673. Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz*, 55 F.3d at 307. *See also*, *Craft*, 539 F.3d at 673 (stating that not all evidence needs to be mentioned, but the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion" (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004))). An ALJ's articulation of his analysis enables the Court to "assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review." *Craft*, 539 F.3d at 673.

### III.  ANALYSIS

Watts contends that the ALJ's decision that she was not disabled due to chronic back pain with radiculopathy and chronic depression is unsupported by substantial evidence.  Filing No. 21 at 9-12; Filing No. 25 at 3-8.  The Commissioner argues that substantial evidence supported the ALJ's findings as to each of Watts' alleged impairments either singly or in combination.  Filing No. 24 at 4-9.  The Court agrees with the Commissioner that the ALJ's decision considered all of the evidence in the record, including medical evidence of Watts' depression, when he determined that she is not disabled.  Contrary to Watts' contention, the Court can easily trace the path of the ALJ's reasoning because he carefully outlined in his decision each alleged impairment, the medical evidence and testimony that might support a finding of disability, and then his reasons for concluding that one or more impairments either did (back injury) or did not (fibromyalgia; greater saphenous vein insufficiency; left ankle fracture; hypertension; mental impairments) meet the standard.  R. at 12-16.  Watts appears to consider the ALJ's decision as disjunctive such that each section should be taken independently of the other.  However, the standard on review is for the Court to consider the entirety of the decision and whether it is evident that the ALJ considered all of the evidence.  *See Craft*, 539 F.3d at 673.  Taking the ALJ's decision as a whole, it is clear that he evaluated all of the evidence presented, including evidence that Watts received a diagnosis of depression.  R. at 14.

Watts further asserts that the ALJ's failure to elicit expert testimony regarding whether or not Watts' combined impairments met or medically equaled any listed impairment is reversible error.  Filing No. 21 at 13-14; Filing No. 25 at 9-10.  The

Commissioner states that the ALJ did not need to take such testimony, particularly with respect to the issues addressed already by the agency physicians. Filing No. 24 at 8-9. The Court agrees with the Commissioner that it was not error for the ALJ to rely upon the evidence in the record to conclude that Watts' alleged impairments did not meet or equal a listing. The ALJ properly relied upon agency physicians who assessed the medical record as well as new x-rays when they determined that Watts' impairments did not meet or equal a listing. *See Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004); *see also Barnett v. Barnhart*, 381 F.3d 664, 671 (7th Cir. 2004). Watts made no showing either at the hearing or in writing in this appeal that the ALJ should have considered a listing other than the one for disorders of the spine or mental impairments. She also made no attempt to show how the medical evidence in combination with the evidence presented at the hearing filled in any gaps in the ALJ's determination that Watts failed to equal the listing criteria for mental impairments alone. Even more telling, Watts failed to identify how any symptoms of her depression could have filled in the gaps left in the objective medical evidence such that the ALJ could conclude that her combined impairments equaled Listing 1.04 regarding impairments of the spine. And, Watts cannot point to any evidence that a treating physician concluded that Watts' impairments rendered her disabled; there simply is no such finding in the record. Watts bore the burden of proof at this stage of the analysis and the ALJ's decision is substantially supported by the evidence in the record.

Watts also contends that the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling 96-7p. Filing No. 21 at 15-18; Filing No. 25 at 11. In large part, Watts relies upon the ALJ's two sentence statement regarding

14

credibility, one of which uses unfortunate boilerplate language, to make her point. *Id.*

Specifically, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> In terms of the claimant's alleged impairments, the undersigned finds the objective evidence does not support the claimant's subjective allegations.

R. at 16. But, as the Commissioner quotes, "the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination." *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013). This is exactly what the ALJ did over the next three or more pages – he explicitly points to information that justifies his credibility determination – including treating physician records that belie Watts' claims that she is unable to work because of any disability. R. at 16-19. For example, the ALJ examined the medical records associated with Watts' back injury and subsequent treatment with surgery and otherwise, R. at 17, but also noted that the same records indicated she was doing rehabilitation at home independently, performed aquatic activities, went to church, did grocery shopping and walked a little. *Id.* Similarly, later in his decision, the ALJ discusses Dr. Cohen's records, where there is some support for a temporary disability, but the greater weight of the evidence supports a conclusion that even Dr. Cohen did not consider Watts permanently disabled. R. at 18. This same discussion includes the most overwhelming evidence that Watts' testimony about ongoing back pain and/or disability from her back is not credible: the

fact that she returned to work in 2007 and continued working through 2011. *Id.* Similarly, her comment to her doctor during a September 29, 2011, visit that she may have a new job driving a bus directly contradicts her allegations of continued back pain and issues with prolonged periods of sitting. *Id.* On this record, the Court concludes that the ALJ's credibility determination is not patently wrong and should not be overturned.

Finally, Watts argues that the ALJ erred at Step V when he omitted significant limitations on Watts' ability to work because of pain and depression. Filing No. 21 at 19; Filing No. 25 at 12. The Commissioner contends that the ALJ properly relied upon the agency's consultants in determining Watts' RFC and the hypothetical question tracked that determination; therefore, there was no error. The Court agrees with the Commissioner that the ALJ's determination of Watts' RFC properly considered and weighed all of the evidence and then concluded that the agency consultants' determination should be adopted. R. at 15-19. Notably, other than her attorney's argument, there is no evidence in the record that any treating physician would have assessed Watts' RFC any differently. The only evidence of any limitations or restrictions placed upon her by a physician date back to early 2005 and were temporary, R. at 18 (discussing Dr. Cohen's February 14, 2005 through May 24, 2005 restriction); or dated in May 2006 and were also temporary (discussing Dr. Cohen's RFC dated May 5, 2006, which was limited to 8 days). R. at 18. Further, as previously mentioned, there is no evidence that any physician told her that she could not work because of her depression. There is no error in the ALJ's determination of Watts' RFC and, correspondingly, no error in the hypothetical he posed to the vocational expert.

## IV. CONCLUSION

For the reasons stated herein, the decision of the Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security, is **AFFIRMED**. Judgment shall be entered accordingly.

IT IS SO ORDERED this 2nd day of June, 2014.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov